IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TEXTRON FINANCIAL CORPORATION                                         PLAINTIFF

v.                                                  CIVIL NO. 09-2044

CRABTREE RV CENTER, INC.,
JAMES G. ADAMS,
JOYCE C. ADAMS and
EZRA J. CRABTREE                                                      DEFENDANTS

### ORDER GRANTING TEMPORARY RESTRAINING ORDER

Before this Court is Plaintiff's, Textron Financial Corporation (hereinafter "TFC"), Motion for Temporary Restraining Order filed on April 15, 2009. (Doc. 2). This motion was referred to the undersigned on April 17, 2009. (Doc. 5).

TFC seeks a temporary restraining order restraining Defendants Crabtree RV Center, Inc. (hereinafter "Crabtree"), James G. Adams, Joyce C. Adams and Ezra J. Crabtree, and any of their agents or employees, from concealing, selling, transferring, pledging, granting a security interest in, or otherwise disposing of the TFC Collateral, or from damaging, destroying, or misusing the TFC Collateral pending a hearing and/or Order of Delivery on TFC's Petition for Immediate Delivery of Personal Property and Temporary Restraining Order and TFC's execution on its Order of Delivery if TFC's Petition is granted. TFC states it is anticipated that from the time TFC files its Petition and obtains the Order of Delivery, it will be several days before the Sheriff

can execute on the Order of Delivery. TFC requests the temporary restraining order to protect its interest in the TFC Collateral and to preserve the status quo.

TFC alleges as a result of Crabtree's ongoing breaches of the Agreement by failing to make payments when due and in selling the TFC Collateral out of trust, the value of the TFC Collateral is no longer sufficient to secure TFC's outstanding balance. TFC states unless a temporary restraining order is granted the remaining TFC Collateral may be concealed, or sold to third parties, or damaged or otherwise destroyed before TFC's Petition for the Immediate Delivery of Personal Property can be heard. TFC states when Defendants misuse, damage, or otherwise destroy, conceal or sell the TFC Collateral, and more specifically the Inventory Collateral, without remitting payment to TFC, such actions cause TFC's secured interest in the TFC Collateral to erode and causes TFC irreparable harm.

**I.    Statement of Facts:**

The Affidavit of Jack Ashby (hereinafter "Affidavit"), an Account Executive for TFC, is responsible for the management of the account referenced herein. (Doc. 4, Exhibit 7).

TFC provided purchase-money financing to Crabtree under an agreement entitled "Credit and Security Agreement" (hereinafter "Agreement") which was executed by Defendant Ezra J. Crabtree, President of Crabtree. (Doc. 4, Exhibit 1). Defendants' James G. Adams, Joyce C. Adams and Ezra J. Crabtree personally guaranteed the Agreement (hereinafter "Individual Guaranties"). (Doc. 4, Exhibits 2, 3, 4).

Mr. Ashby states under the Agreement, Crabtree is obligated to pay to TFC the costs of each item of collateral financed or re-financed through TFC. As collateral, TFC took a security

interest in all equipment and inventory, including recreational vehicles, in which Crabtree holds an interest.

On March 4, 2009, Mr. Ashby, along with Mark Marfice (Textron Field Service Representative) and Mark Ryan (Textron Vice President of Operations) participated in a conference call with Bert Adams, who spoke on behalf of Crabtree. Mr. Adams confirmed that Crabtree had sold certain units upon which the sales price had been funded to Crabtree but which proceeds were used by Crabtree to pay one or more other creditors of Crabtree's rather than to TFC, as required by the Agreement. Evidence of the funding to Crabtree is attached collectively as Exhibit A. (Doc. 4, Exhibit 7, p. 6-15).

Mr. Ashby states Crabtree has sold but has not paid TFC for, the following two units, for a total amount due for *sold and unpaid* of $127, 097.03:

      1. Manufacturer: Winnebago; serial number 2969; $80, 258.03 due;

      2. Manufacture: Keystone; serial number 4YDF393299F810947;

      $ 46,839.00 due.

Mr. Ashby states TFC has performed all conditions, covenants and promises required of it under the terms and conditions of the Agreement.

On March 6, 2009, TFC sent a demand letter (hereinafter "First Demand Letter") to Crabtree relating to the outstanding debt. (Doc. 4, Exhibit 5). By the First Demand Letter, TFC informed Crabtree of its intent to exercise its rights under the Agreement by accelerating and demanding immediate payment of all amounts due under the Agreement and Individual Guaranties if TFC had not received payment in full by March 9, 2009. By copy of the same letter, TFC also demanded payment from Defendants' James G. Adams, Joyce C. Adams and

Ezra J. Crabtree under their Individual Guaranties. Despite receiving the First Demand Letter, Defendants refused to pay TFC the monies due.

On March 11, 2009, TFC sent a second letter to Crabtree (hereinafter "Second Demand Letter"). (Doc. 4, Exhibit 6). This letter informed Defendants that they were in default under the terms of the Agreement and Individual Guaranties and that TFC had accelerated the maturity date of all obligations. As such, TFC demanded payment in full of all obligations under the Agreement and Individual Guaranties.

Mr. Ashby states through April 14, 2009, under the Agreement, there was justly due and owing to TFC from Defendants the principal amount of $1,736,546.53. Additionally, as of March 31, 2009, under the Agreement, there was justly due and owing to TFC from Defendants accrued interest in the amount of $41,217.80, as well as, late fees and various other changes.

Mr. Ashby states TFC has a purchase money security interest in the described inventory and a first broad-filed security interest in other collateral more fully described above. As a result of Crabtree's default upon the TFC loan documents, TFC is entitled to the immediate possession of said inventory and other collateral described herein. Mr. Ashby states because Crabtree defaulted upon the TFC loan documents, Crabtree is wrongfully detaining the inventory and other collateral.

Mr. Ashby states TFC Collateral has not been taken for tax or fine against TFC or under any order or judgment of a court against it, or seized under an execution or attachment against the TFC Collateral, or, if so seized, that it is by statute exempt from seizure.

TFC alleges it has no adequate remedy at law for the injuries and damages currently being suffered and which are threatened in that the inventory collateral is being used in violation

of the Agreement and Crabtree has sold inventory collateral out of trust.  TFC alleges if the collateral is damaged, destroyed, or allowed to further depreciate by misuse, or is sold out of trust, or given away, TFC's security interest in the TFC Collateral will further be eroded.

## II.    Discussion:

Prior to doing the analysis regarding the issuance of a temporary restraining order, the court acknowledges that Plaintiff posted bond in the amount of $15,000,000.00 as is required by Rule 65 (c) of the Federal Rules of Civil Procedure.  FED. R. CIV. PROC. 65 (c).  (Doc. 7).

Rule 65 of the Federal Rules of Civil Procedures governs the issuance of temporary restraining orders and preliminary injunctions.  In deciding a motion for a temporary restraining order or a preliminary injunction, the courts are instructed to consider what have come to be known as the *Dataphase* factors:  (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc).  *See also Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir.1997); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir.1993).  No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction.  *See Sanborn*, 997 F.2d at 486; *Calvin Klein Cosmetics Corp. v. Lenox Lab., Inc.*, 815 F.2d 500, 503 (8th Cir.1987).  The burden of establishing the necessity of a temporary restraining order is on the movant.  *Baker Electric Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

With the applicable standard in mind, we turn to an examination of the first factor whether Plaintiff has established a likelihood of success on the merits. TFC contends it is likely to succeed on its claims for the delivery and final and permanent possession of the TFC Collateral as described by Mr. Ashby and delineated in the Agreement. (Doc. 4, Exhibits 1, 7).

Plaintiff "is not required to prove a mathematical (greater than fifty percent) probability of success on the merits." *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003). Rather, it is a question of whether plaintiff has a "fair chance of prevailing" after discovery and a full trial. *Id. citing Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing.").

TFC has presented the Affidavit, Agreement and Individual Guaranties as evidence that it has an immediate right to possess the TFC Collateral listed in Exhibit 1. (Doc. 4). TFC argues that Crabtree defaulted upon the Agreement by failing to make payments to TFC when due. TFC states it retained a purchase money security interest in the described inventory and a first broad-filed security interest in other collateral more fully described in the Agreement. As a result of Crabtree's default upon the Agreement, TFC states it is entitled to the immediate possession of the TFC Collateral as described in the Agreement. TFC also states Defendants default under the Agreement and Individual Guaranties have directly and proximately caused damages to TFC in an amount to be determined at trial, for which Defendants are liable to TFC as compensatory damages.

As reflected in the Affidavit, as a result of Crabtree's failure to make payments when due and selling the inventory out of trust, the value of the inventory collateral is no longer sufficient to secure TFC's outstanding balance. Due to Crabtree's past conduct of selling inventory collateral out of trust, TFC believes that Crabtree will dispose of the remaining inventory collateral without remitting payment to TFC. TFC seeks a temporary restraining order to freeze any movement, damage or concealment to the TFC Collateral. TFC states it filed a Petition for Immediate Delivery of Personal Property and seeks an Order of Delivery. (Doc. 4). Based on the above, this court finds TFC has a high probability of success on the merits.

We turn to the question of whether Plaintiff has shown a threat of irreparable harm if the temporary restraining order is not issued. TFC alleges it is entitled to a temporary restraining order against Crabtree because when Crabtree sells inventory collateral to third party purchasers without remitting payment to TFC, as required under the Agreement, it causes TFC immediate and irreparable harm because TFC forever loses its security interest in those units which erodes TFC's secured position. TFC states if Defendants are allowed to continue to make out of trust sales, TFC is likely to find itself completely unsecured. Based on the above, the court finds TFC has shown the threat of irreparable harm if the temporary restraining order is not issued.

We now turn to the balance between this harm and the injury that granting the temporary restraining order will inflict on other interested parties. The Court recognizes that issuing the temporary restraining order would enjoin Crabtree from conducting the business of selling recreational vehicles which would lead to the harm of loss of sales. However, based on the allegations and evidence before this Court, the Court finds a far greater harm would be caused to all interested parties by not granting the injunction.

Finally, we look to see whether the issuance of a temporary restraining order is in the public interest. TFC provided purchase money financing to Crabtree as specified in the Agreement. Under this Agreement, Crabtree is obligated to pay to TFC the costs of each item of collateral financed or re-financed through TFC. TFC alleges Crabtree has failed to fulfill it's part of the business negotiations which has caused TFC's secured interest in the inventory collateral to increasingly diminish. The alleged failure to conduct business as negotiated could harm the public in that consumers could unknowingly be purchasing the inventory collateral in question. The court finds there is a public interest in having confidence in making businesses purchases.

### III.   Conclusion:

After carefully reviewing the entire record, the Court finds that TFC has met its burden of establishing the necessity of a temporary restraining order. Accordingly, the Court GRANTS Plaintiff's Motion for Temporary Restraining Order.

**IT IS ORDERED** that Crabtree, its officers, agents, servants, employees, attorneys and all parties acting in concert with it including separate Defendants James G. Adams, Joyce C. Adams and Ezra J. Crabtree, be restrained and enjoined from concealing, selling, transferring, pledging, granting a security interest in or otherwise disposing of the TFC Collateral; and from damaging, destroying or misusing the TFC Collateral pending a hearing.

**IT IS ORDERED** that all named Defendants shall appear in the United States District Court for the Western District of Arkansas in Fort Smith on the **1st day of May, 2009, at 10:00 A.M.**, to show cause under Rule 65 why Defendants, its officers, agents, servants, employees,

attorneys and all parties acting in concert with it, should not be preliminarily enjoined during the pendency of this action from engaging in the above-described acts.

     ISSUED this 23rd day of April, 2009, at 9:32 A.M.

                                /s/ *J. Marschewski*
                                HON. JAMES R. MARSCHEWSKI
                                UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)